DECISION AND JUDGMENT ENTRY
Angela Groves appeals the judgment of the Adams County Court of Common Pleas that continued temporary custody of her four children in the Adams County Children's Services Agency (the "Agency"). She first argues that the trial court erred in considering a medical report without allowing her the opportunity to establish good cause to cross-examine the preparer of the report pursuant to Juv.R. 34(B)(3). We agree because the trial court erred by preventing Angela from attempting to establish good cause to cross-examine Dr. Ostrander or from supplementing, explaining, or disputing any information in Dr. Ostrander's report. Angela also asserts that the trial court's decision is against the manifest weight of the evidence and that the agency's case plan violated her right against self-incrimination because it required her to admit that her children were sexually abused. We do not address these arguments because they are moot. We reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
 I.
Angela Groves is the mother of four children. Kenneth Groves, Jr. is the father of Courtney and Sammy Groves. Herman Perkins is the father of Ashley Miller and Aaron Perkins. In 1992, Kenneth Groves, Jr. pled guilty to a charge of gross sexual imposition involving Ashley. Ashley went to live with her grandmother. Six years later, Ashley returned to live with her mother, who then was married to Mark Groves. Mark is the nephew of Kenneth Groves, Jr.
In January 1999, the Adams County Children's Services Agency filed a complaint alleging that Aaron was a dependent child because a household member required him to engage in criminal activity, and that Ashley was a dependent child because a household member required her younger brother to engage in criminal activity. On March 24, 1999, the trial court held an adjudicatory hearing. Aaron testified that Mark had forced him and his younger half-brother Sammy to steal from neighboring homes. He also testified that he had witnessed Mark sexually abuse Ashley. The trial court adjudicated Aaron and Ashley dependent children. As a result of Aaron's testimony and other statements to the Agency, the Agency then filed a complaint alleging that Courtney was an abused child because Mark engaged in sexual conduct with Courtney, and filed a complaint alleging that Sammy was a dependent child because he lived in a home where his sibling was the victim of sexual activity.
In its original case plan, the Agency listed two concerns. It indicated that the children need to live in a safe and stable environment and that Angela needed to acknowledge the problems and accept responsibility for them.
Apparently, Mark was indicted for the alleged sexual conduct with Ashley and Courtney. Eventually he pled guilty to two counts of rape against Courtney and was sentenced to twenty years in prison.
On June 21, 1999, the Agency filed an amended case plan. The Agency changed its goal to that of permanent custody of all four children. In this case plan the Agency alleged that Angela refuses to believe that anyone sexually abused her children.
After granting Angela Groves' several requests for continuances of Sammy and Courtney's adjudication hearing, the trial court adjudicated Courtney an abused child and Sammy a dependent child in July 1999.
After a hearing on July 21, 1999 concerning Angela's Groves' objections to the Agency's most recent case plan, the trial court ordered that the Agency pursue reunification of Angela Groves with her children instead of permanent custody.
In November 1999, the trial court continued for six months the matter of whether to grant the Agency permanent custody.
In March 2000, the trial court dismissed the Agency's motion for permanent custody but ordered the Agency to retain temporary custody of the children. The court also ordered the Agency to make every effort toward reunification. Angela did not file an appeal from this order.
On May 10, 2000, the trial court sustained Angela's objections to the case plan and terminated any order that Dr. Ostrander evaluate Angela. The trial court noted that it had previously ordered the Agency to make every effort toward reunification and found that the Agency failed to show that it had made such efforts.
The Agency filed a motion seeking, among other things, that the Agency's temporary custody of the children be continued. The Agency attached a letter from Dr. Ostrander, Ph.D, who had evaluated Angela's children. She opined that Angela's home is not likely to provide the supportive and stable environment the children need as a result of their sexual abuse. She explained that the children felt that their mother failed repeatedly to remove or protect them from the abuse, despite their numerous pleas for help. She further opined that "such an unsupportive and invalidating, non-protective environment places the children at high risk for continued progression of current psychological pathology and leaves them extremely vulnerable to developing severe and long-term mental illnesses." According to Dr. Ostrander, the children told her that Mark Groves sexually molested three of the children, Mark Groves forced the boys to participate in the sexual abuse of their sisters, and that they had repeatedly told their mother of the abuse.
Angela filed a motion to terminate the Agency's temporary custody in May 2000. On May 30, 2000, the trial court held a hearing, but due to time constraints scheduled a hearing for Angela's motion and for a review of the temporary custody for August 3, 2000. At the May 30, 2000 hearing, the parties discussed the admissibility of Dr. Ostrander's letter. The trial court stated:
 I have not reviewed the report * * * due to the fact that we were going to have a hearing on it that would last approximately a day, if anything wasn't resolved today, I did not review it and I won't review it until we receive testimony from the witness-stand, if, if it's necessary from the doctor.
The August 3, 2000, hearing began with Angela presenting her case on the motion to terminate temporary custody. Angela presented several witnesses who testified regarding her housing, ability to care for the children, and compliance with the Agency's case plan. Angela did not call Dr. Ostrander as a witness.
Upon the completion of Angela's case, the Agency argued that testimony indicated that Angela's motion should be overruled and their temporary custody of the children should be continued because of the recent setbacks in Angela's housing and employment. The Agency indicated that if the court did not agree at that point in the hearing, that they would call Dr. Ostrander to the stand to present her final report. After a reply by Angela's counsel, the trial court asked that the Agency file Dr. Ostrander's final report. The court indicated that it did not need the report, but that it would like to see what the report contained. Then the trial court ruled in favor of the Agency's motion and denied Angela's motion to terminate temporary custody. The trial court stated that it would review the case again in six months.
After Angela requested findings of fact, the trial court issued fifteen findings of fact, including:
 14. Dr. Patricia Ostrader (sic) has completed the psychological evaluations of the children, and although the report indicates that some progress has been, (sic) there are grave concerns on the part of the doctor regarding the reunification of the children with their mother at this present time.
Angela appeals. She did not assert any assignments of error in her appellate brief as required by App.R. 16. Although we may ignore error that an appellant fails to assign and argue, Hawley v. Ritley (1988),35 Ohio St.3d 157, 159, in the interest of justice we will address the "issues" presented by Angela:
 A. The trial court abused its discretion in considering the children's psychological evaluations in disregard of Juvenile Rules 32, 34 (sic) and its own previous rulings.
 B. The Agency failed to meet its burden for an extension of temporary custody and presented no evidence re (sic) Appellant-Mother's case plan objections sustained by the Court on 5/10/00.
 C. The Court's findings and conclusions were not supported by clear and convincing evidence.
 D. The Agency's reason for keeping temporary custody stems from appellant's refusal to "admit" to the precise allegations set forth by the Agency regarding the abuse, which violates Appellant-Mother's Fifth Amendment protections.
 II.
In her first issue, Angela argues that the trial court erred by considering Dr. Ostrander's report without allowing her the opportunity to establish good cause to cross-examine the doctor pursuant to Juv.R. 34(B)(3). The Agency contends that Angela should have called Dr. Ostrander during the presentation of her case if she wanted to examine her. However, the trial court, with the consent of the Agency, assured Angela at a prior hearing that it would not consider Dr. Ostrander's report until Dr. Ostrander was on the witness stand.
Juv.R. 34(B)(3) states:
 Medical examiners and each investigator who prepared a social history shall not be cross-examined, except upon consent of all parties, for good cause shown, or as the court in its discretion may direct. Any party may offer evidence supplementing, explaining, or disputing any information contained in the social history or other reports that may be used by the court in determining disposition.
A juvenile court may conduct a dispositional hearing in an informal manner. Juv.R. 27. The juvenile court may "admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Juv.R. 34(B)(2).
Implicit in Juv.R. 34(B)(3) is the requirement that a juvenile court permit a party to attempt to establish the "good cause" that would require the juvenile court to permit cross-examination. Furthermore, Juv.R. 34(B)(3) requires the juvenile court to permit any party to "offer evidence supplementing, explaining, or disputing any information contained" in a report used by the juvenile court in determining disposition. See, e.g. In re Sadiku (Nov. 22, 2000), Summit App. No. 20150, unreported (trial court erred by preventing rebuttal testimony after guardian ad litem testified to matters outside her previously submitted report).
We first find that Angela did not waive her argument by failing to call Dr. Ostrander as a witness in her own case. At a prior hearing, the parties and the trial court agreed that the trial court would not consider Dr. Ostrander's report until she testified. In announcing its opinion, the trial court referred to Dr. Ostrander's report. While the trial court's statement is somewhat ambiguous as to whether it relied upon Dr. Ostrander's report in making its dispositional order, the subsequent findings of fact and conclusions of law filed by the court make it clear that it did. At the hearing, and in documents filed after the hearing, Angela objected to the use of the report. At the hearing, the trial court prevented her from making any arguments concerning the report, and therefore prevented her from explaining her objection. Because Dr. Ostrander did not testify at the hearing, we cannot find that Angela waived this argument by failing to call Dr. Ostrander to the stand.
We next find that the trial court erred by preventing Angela from attempting to establish good cause to cross-examine Dr. Ostrander or from supplementing, explaining, or disputing any information in Dr. Ostrander's report. Once the trial court reversed its position on using Dr. Ostrander's report in determining the disposition of Angela's children, Angela was entitled to supplement, explain, or dispute the report pursuant to Juv.R. 34 and was at least entitled to attempt to show good cause to cross-examine Dr. Ostrander. Accordingly, we sustain Angela's first issue.
 III.
Because our disposition of Angela's first issue disposes of this appeal and therefore renders the remaining issues moot, we decline to consider them. App.R. 12(A)(1)(c)
 IV.
In sum, we sustain Angela's first issue and decline to consider the rest of her issues because they are moot. Accordingly, we reverse the judgment of the trial court and remand for proceedings consistent with our decision.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, J. and Harsha, J.: Concur in Judgment and Opinion.
 ________________________ Roger L. Kline, Judge